IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID ALLEN REINHARDT             *

    Plaintiff                               *

        v.                               *           Civil Action No. DKC-18-3121

WARDEN RICHARD GRAHAM, JR.,   *
MR. WEBER,
LT. BUTLER,                           *

    Defendants                     *
                                        ***

**MEMORANDUM OPINION**

After this court denied injunctive relief and directed service, (ECF Nos. 8, 9) Defendants filed a motion to dismiss or for summary judgment (ECF No. 17) in response to Plaintiff David Allen Reinhardt's civil rights complaint as amended (ECF Nos. 1, 7). Mr. Reinhardt opposes the motion via a motion for summary judgment. (ECF No. 19). The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set-forth below, Defendants' motion, construed as one seeking summary judgment, will be granted and Plaintiff's motion will be denied..

**Background**

Mr. Reinhardt filed this complaint following an incident that occurred on August 27, 2018, at Western Correctional Institution (WCI)[1] where he was incarcerated. He explains that he was approached by Sgt. Middleton at approximately 4:20 p.m., having returned to his cell after the evening meal. Sgt. Middleton told Mr. Reinhardt that "per orders [of] Lt. Bennett" he had to move Mr. Reinhardt to Administrative Segregation and advised that "the good news [was] 'you did not

---

[1] On January 3, 2019, Mr. Reinhardt was transferred to Eastern Correctional Institution (ECI). ECF No. 17-4 at p. 2, ¶ 6.

get stabbed today.'" ECF No. 7 at p. 3. Sgt. Middleton told Mr. Reinhardt he would look into why this was happening. *Id*.

Approximately fifteen minutes later, the correctional officer who had accompanied Sgt. Middleton to Mr. Reinhardt's cell returned. He told Mr. Reinhardt that, "'Rob was to stab you on orders from DMI because you won't let nor allow DMI to steal tobacco from the Native American service nor will you give it to them either.'" ECF No. 7 at p. 3. Mr. Reinhardt asked how the planned assault was supposed to have occurred. In response, the officer advised that "Rob" turned in the weapon while at the medical unit and admitted that "he was to stab David Reinhardt 3B44 wheelchair pusher." *Id*. The officer further reported that, when Rob was questioned, he indicated that he did not have a problem with Mr. Reinhardt and that is why he did not follow through with the assault. *Id*.

Mr. Reinhardt explains that the purpose of placing him on administrative segregation was to allow time for an investigation, but he was never interviewed by anyone investigating the incident. ECF No. 7 at p. 3. He describes himself as a person who stands up for what he believes in and the DMI as a "white gang that only wants to steal tobacco and disrupt Native American Ceremon[ies] by talking." *Id*. In Mr. Reinhardt's view, the totality of the circumstances as well as later-occurring events, created a pervasive risk of harm to his safety. He points to an incident that occurred on September 2, 2018, where an inmate was "found dead in [a] cell and only the cell buddy [was] in there" as further evidence of a pervasive risk of harm. *Id*. at p. 4. Further, Mr. Reinhardt states that he has been incarcerated for 32 years and has "seen contract killing in prison cells" which were motivated by money. *Id*.

On August 30, 2018, Mr. Reinhardt wrote to Warden Graham seeking assistance with maintaining a "single cell and a job while on admin[istrative] seg[regation]." *Id*. Warden Graham reportedly never responded to Mr. Reinhardt's missive. *Id*.

On September 10, 2018, Mr. Reinhardt wrote to Lt. Bennett because he was in charge of the investigation in Mr. Reinhardt's case. In the written message Mr. Reinhardt informed Lt. Bennett that he would "not go on Protective custody" and he would not "sign off." *Id*. Mr. Reinhardt states he never received a response from Lt. Bennett. *Id*.

On October 1, 2018, Mr. Reinhardt saw a Case Management Team for review of his housing assignment status. ECF No. 7 at p. 4. At that time Mr. Reinhardt was informed that Lt. Bennett told the team to put him back into general population. *Id*. The team made the recommendation to move Mr. Reinhardt back to general population. *Id*.

On October 4, 2018, Mr. Reinhardt filed the instant complaint in this court. *Id*. He explains that "[i]n any other prison where I was housed in if and when I was put on admin. seg. the investigating [lieutenant or captain] would come talk to me." *Id*. Mr. Reinhardt believes the manner in which his case was handled was irresponsible and showed a disregard for his safety. *Id*. As relief, Mr. Reinhardt seeks monetary damages.[2]

Defendants do not dispute the factual allegations raised by Mr. Reinhardt in his complaint. Rather, they assert, *inter alia*, that the actions taken in response to the reported threat to Mr. Reinhardt were constitutionally adequate and did not run afoul of the Eighth Amendment's prohibition on cruel and unusual punishment. ECF No. 17. As noted by this court in its Memorandum Opinion denying preliminary injunctive relief, Defendants explained that:

---

[2] As noted, Mr. Reinhardt's request for injunctive relief was denied by the court on January 14, 2019. ECF Nos. 8 and 9.

> [C]ounsel provides a declaration under oath from Correctional Case Management Supervisor Michael Yates along with relevant records. ECF No. 4. Yates confirms that on August 27, 2018, Plaintiff was placed on administrative segregation pending an investigation into an allegation that he was going to be stabbed by inmate Robert Hawkins. ECF No. 4-1 at p. 1, ¶ 3. The investigation was prompted when Hawkins reported* to the Officer in Charge at the WCI Medical Unit that he was ordered by the DMI to stab Plaintiff because Plaintiff had stopped the DMI from stealing tobacco from the Native American service. ECF No. 4-1 at p. 8 (Information Report dated Aug. 27, 2018). A weapon was found in the inmate's bathroom in the Medical unit, near a sink, after Hawkins told officers that he had left it there for the purpose of carrying out his assault on Plaintiff. *Id.* at p. 7 (Administrative Segregation Investigative Report), *see also* p. 8 (documenting weapon found).
>
> Lt. Margaret Bennett investigated the allegation and concluded her investigation on September 26, 2018, advising the Case Management team that her investigation into Hawkins was not complete; that Hawkins had been placed on administrative segregation 120; and that Plaintiff could be reassigned to general population the following day. ECF No. 4-1 at, p. 1 ¶ 5; ECF No. 4-1 at p. 5.
>
> On September 27, 2018, the Case Management team recommended Plaintiff's removal from administrative segregation and he was returned to general population on October 5, 2018. ECF No. 4-1 at pp. 1-2, ¶¶ 5&6. Hawkins remains assigned to administrative segregation where he will stay until he is transferred out of WCI. *Id.* at ¶ 7.
>
> _____
> \*   Hawkins reportedly stated, "I am supposed to stab someone but I am not going to do it. The knife is in the bathroom." ECF No. 4-1 at p. 8.

ECF No. 8 at pp. 2-3.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Defendants assert that they are entitled to summary judgment because the complaint is moot;[3] that they are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity[4] as well as qualified public official immunity; that there is no evidence

---

[3] Defendants premise their claim that the complaint is moot on Mr. Reinhardt's transfer shortly after he filed this complaint. In this court's Memorandum Opinion denying injunctive relief, Defendants were directed to address Mr. Reinhardt's claim for damages. ECF No. 8 at p. 6. A claim for damages is not made moot when the injunctive relief sought is either denied or becomes a moot issue when a plaintiff receives relief equivalent to what he sought. The claim that the complaint is moot is without merit.

[4] It is not clear from the complaint that Mr. Reinhardt is asserting claims against these Defendants in their official capacity.

that the named Defendants were personally involved in addressing Mr. Reinhardt's complaints; and that Mr. Reinhardt failed to exhaust administrative remedies;[5] and the undisputed facts do not support an Eighth Amendment claim. ECF No. 17-1. The merits of Mr. Reinhardt's claim are addressed below. The remaining defenses raised by Defendants will not be addressed as they are either without merit, not properly supported with evidence, or unnecessary to reach in light of the below analysis.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

---

[5] The only documentary evidence provided to support Defendants' assertion that Mr. Reinhardt did not exhaust administrative remedies is one conclusory declaration under oath stating that none of the five administrative remedy procedure requests he filed while at WCI "have anything to do with Civil Action DKC-18-3121." ECF No. 17-2 at ¶ 3. Although the declaration references attached records, the only record attached concerns Mr. Reinhardt's housing assignments. *Id*. at p. 2. Defendants have not satisfied their burden of proof regarding this affirmative defense and, as a consequence, the complaint will not be dismissed on the ground that the claims have not been administratively exhausted. *See Jones v. Bock*, 549 U.S. 199, 211-13 (2007) (burden of proof for affirmative defense of non-exhaustion is on Defendants); *Coley v. Gallagher*, 2013 WL 210724 at *2 (D. Md. 2013) (same).

he must also draw the inference." *Id.* at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference

7

was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence' so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "[T]he Eighth Amendment requires more than <u>some</u> action: It requires <u>reasonable</u> action." *Cox v. Quinn*, 828 F.3d 227, 237 (4th Cir. 2016) (emphasis in original). Where the failure to take action is "so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances" an Eighth Amendment claim is supported. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004).

Central to Mr. Reinhardt's claim is that he was not kept informed of the investigation into the threat made on his life, causing him undue stress. He has not, however, explained how the failure to keep him informed added to a known risk of harm to him, nor has he alleged any facts tending to show that the risk of harm remained elevated after his would-be assailant was removed from the prison where he was confined. Here, Mr. Hawkins alerted prison officials of the plan to assault Mr. Reinhardt and told them where the weapon could be found. Prison officials immediately placed Mr. Reinhardt in administrative segregation while the threat was investigated for a period of one-month. The fact that Mr. Reinhardt was not interviewed as a part of the investigation is not evidence that the actions taken were unreasonable. *See e.g. Cox*, 828 F.3d at 236 (correctional officers were deliberately indifferent to prisoner's substantial risk of serious harm where they failed to take reasonable action after prisoner repeatedly informed them that he

8

feared for his safety, ignored his warnings not to discuss his report with other inmates and augmented the risk by doing what he warned against).

Mr. Reinhardt does not deny that he remained in general population at WCI without receiving further threats of harm from other members of the gang that recruited Mr. Hawkins, but simply intimates that the threat to his safety continued. *See* ECF No. 19 at p. 1. He admits, however, that after members of the gang were made "aware that they were being watched" he was not threatened or harmed while in general population at WCI. *Id*. at p. 2. Further, Mr. Reinhardt admits he told case management staff he would refuse protective custody (*see* ECF No. 7 at p. 4), a statement staff viewed as an attempt to manipulate housing assignments (*see* ECF No. 4-1 at p. 3). Although he takes issue with the initial decision to transfer Mr. Hawkins and not him, Mr. Reinhardt was ultimately transferred to another prison (ECI) on the opposite side of the State in the wake of this incident.[6] Mr. Reinhardt's objection that he was put back into general population without having first signed a body waiver (*see* ECF No. 19 at p. 1) and denied a transfer is without any legal significance given his prior statement that he would not cooperate with staff's efforts to ensure his safety. While Mr. Reinhardt's concern that the prison gang that targeted him was still operating when he was released to general population is well taken, this court's role is not to micromanage prison housing assignments. Additionally, the evidence presented in this case does not support a finding that the measures taken were unreasonable or evidenced a callous disregard for Mr. Reinhardt's safety.

---

[6] Mr. Reinhardt takes issue with the characterization of his transfer as a response to the threat presented at WCI and maintains that it was actually a response to the initiation of this civil lawsuit. ECF No. 19 at p. 1-2. Whether Mr. Reinhardt agrees with the action taken is not the deciding factor; rather, it is whether the action taken was reasonable in light of the circumstances.

For these reasons Defendants are entitled to summary judgment in their favor. A separate Order granting Defendants' motion and denying Mr. Reinhardt's motion follows.


September 18, 2019                            /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge